# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01395-SCT

*SARENTHIA CHANNEL; PEGGY CRIST;
THERESA EDWARDS; PATRICIA GUTHRIE;
JANE HAMILTON; HELEN HEARD; ALICE
MCCRAVEN; BERTHA MIXON; JENNIE
PARKER; JAMES REED, JR.; GLENDA RIVERS;
MOLLY ROBINSON; PAMELA ROBINSON;
KAREN THORNTON; VIRGINIA TOWNSEND;
VERA WELLS; MARY WHITTINGTON; LINDA
WILLIAMS; AND PEGGY WINTERS*

*v.*

*PAUL KELLY LOYACONO AND E. SCOTT
VERHINE*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2005 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RONALD W. LEWIS |
| | DAVID G. HILL |
| | DAVID MINYARD |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | CHRISTY MICHELLE SPARKS |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 04/19/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Hinds County Circuit Court, First Judicial District, dismissed with prejudice the

plaintiffs'[1] claims of legal malpractice against defendant attorneys Paul Kelly Loyacono and E. Scott Verhine. In granting the defendants' Motion to Dismiss, or Alternatively, for Summary Judgment the circuit court found that the plaintiffs' claims were barred by: (1) the statute of limitations, (2) res judicata and collateral estoppel, (3) waiver and estoppel, (4) accord and satisfaction, and (5) settlement and release. We affirm in part and reverse and remand in part.

**FACTS**

¶2.    In February and March 2000, Loyacono and Verhine, attorneys in Vicksburg, contracted with approximately fifty individuals to represent them against American Home Products (AHP) for alleged injuries resulting from the use of certain diet drugs produced by AHP, including "Fen-phen," Pondimin, and Redux. These contracts authorized Loyacono and Verhine to hire additional counsel to litigate the claims. Loyacono and Verhine associated the law firm of Varas and Morgan to assist with the AHP claims in May 2000. In this at-will association, Loyacono and Verhine never transferred to Varas and Morgan any of the representation contracts, and Varas and Morgan never entered into representation contracts with the clients.

¶3.    Varas and Morgan filed lawsuits against AHP on behalf of numerous plaintiffs,

---

[1]All were plaintiffs in a mass tort claim against American Home Products, now Wyeth Pharmaceuticals. They are Sarenthia Channel, Peggy Crist, Theresa Edwards, Patricia Guthrie, Jane Hamilton, Helen Heard, Alice McRaven, Bertha Mixon, Jennie Parker, James Reed, Jr., Glenda Rivers, Molly Robinson, Pamela Robinson, Karen Thornton, Virginia Townsend, Vera Wells, Mary Whittington, Linda Williams and Peggy Winters. Alice McRaven's name is spelled "McCraven" periodically throughout the record. However, she signed her settlement agreement "McRaven."

2

including the clients of Loyacono and Verhine.[2] Loyacono and Verhine became dissatisfied with the way Varas and Morgan were handling the claims. In November 2000, Loyacono and Verhine decided to disassociate from Varas and Morgan and deal directly with AHP. Varas and Morgan were given written notice of the termination of the association on January 4, 2001.[3]

¶4.     In late November and early December 2000, Loyacono and Verhine began settlement discussions with AHP. At that time, Loyacono and Verhine obtained settlement offers from AHP and began meeting with each client to discuss the settlement offers. Loyacono and Verhine explained to each client that the client had the option of accepting the offer or rejecting the settlement offer and holding out for more money and possibly a trial. The clients were advised of the risks and benefits of refusing the settlement offer, including the possibility that the offer would not be made again, that their claims could take months or even years to be resolved, and that representatives for AHP had mentioned the possibility of bankruptcy. Loyacono and Verhine also made clear that they would continue to pursue the claims of the clients who chose not to settle.

¶5.     Some clients chose not to accept the settlement offer, and Loyacono and Verhine went back to AHP demanding higher settlements. Loyacono and Verhine were able to get higher

---

[2] *Green, et al. v. AHP,* Civil Action No. 2000-143; *Williams, et al. v. AHP*, Civil Action No. 2000-200; *Harried, et al. v. AHP*, Civil Action No. 2000-109-(CM)(J). All of these suits were filed in the Circuit Court of Jefferson County.

[3] The termination letter implies that a conversation had taken place on December 29, 2000, and that Loyacono had informed Varas and Morgan that their association would be terminated.

3

offers which some of these clients found acceptable. Some of the clients refused the new offer and rejected settlement altogether. Ultimately, all of the plaintiffs in this action ("the clients") settled. Each of the clients received their funds on January 26, 2001.

¶6. Varas and Morgan contacted the settling clients of Loyacono and Verhine. In late December 2000, Varas and Morgan began their effort to get the clients to fire Loyacono and Verhine and allow Varas and Morgan to represent them. Varas and Morgan also wanted to find out how much money had been offered to each of the clients by AHP and tried to persuade the clients to reject the settlement offers.

¶7. In late January 2001, Varas and Morgan filed motions in two of the prior actions, *Green* and *Williams*, see n.2 *supra*, challenging Loyacono and Verhine's right to represent the clients and the validity of the settlement agreements negotiated by Loyacono and Verhine. An identical motion was filed in the third of the prior actions, *Harried*, in December of 2003.[4] The motions accused Loyacono and Verhine of acting dishonestly, negligently, and fraudulently in negotiating the settlements.

¶8. A hearing was held in the circuit court on January 18, 2002, regarding the motions in *Green* and *Williams*. The hearing in *Harried* was held in March of 2004. Most of the clients attended these hearings and challenged the validity of the settlement agreements. Many of the clients actually testified at the hearings.[5] While all of the clients testified that Loyacono

---

[4] Only one of the plaintiffs, Pamela Robinson, was a party in *Harried*.

[5] Those that testified included Peggy Crist, Theresa Edwards, Sarenthia Channel, James Reed, Jr., Patricia Guthrie, Jane Hamilton, Helen Heard, Alice McRaven, Bertha Mixon, Glenda Rivers, Molly Robinson, Vera Wells, Mary Whittington, Linda Williams, Peggy Winters, and Pamela Robinson.

4

and Verhine had acted dishonestly, negligently, and fraudulently in negotiating their settlements, each of them testified that they had signed their settlement agreements, received the proceeds, and considered their cases settled. None of the clients offered to return or refund any of the proceeds. The signed settlement agreements, receipt of settlement funds agreements, and representation agreements with Loyacono and Verhine were entered into evidence.

¶9.     The circuit court ruled on the motions in *Green* and *Williams* in March 2004. It held that Loyacono and Verhine were the clients' attorneys; that Loyacono and Verhine negotiated the settlement agreements; and that the clients knowingly and voluntarily agreed to and signed the settlement agreements, received the monies that were under the settlement agreements, and considered their respective claims settled. The same ruling was made on the *Harried* motion in April 2004. Pursuant to Rule 54(b), final judgment was entered on each of the motions. The clients did not appeal.

¶10.    The legal malpractice action presently before this Court was filed in Hinds County on January 5, 2004. The clients asserted claims against Loyacono and Verhine for legal malpractice, negligence, and conspiracy in connection with the settlement agreements. On June 15, 2004, Loyacono and Verhine filed their Motion to Dismiss, or, Alternatively, for Summary Judgment on the grounds that, both as a matter of law and undisputed fact, that the clients' claims were barred by the statute of limitations, res judicata, collateral estoppel, waiver and estoppel, accord and satisfaction, and settlement and release.

¶11. The Circuit Court of the First Judicial District of Hinds County held that any alleged malpractice, fraud, or negligence by Loyacono and Verhine would have occurred in November and December 2000 when Loyacono and Verhine negotiated and obtained settlement offers and presented them to the clients for acceptance or rejection; the clients presented no evidence to show that Loyacono and Verhine committed any negligent or fraudulent acts or omissions after the conclusion of the settlement negotiations and presentations in December 2000; and that the clients' claims were without merit and were barred by the defenses raised by Loyacono and Verhine. The clients appeal from the judgment of the circuit court.

## STANDARD OF REVIEW

¶12. It is well settled that this Court applies a de novo standard of review to the grant or denial of summary judgment by a trial court. **Leffler v. Sharp**, 891 So. 2d 152, 156 (Miss. 2004). When the evidence is considered in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Miss. R. Civ. P. 56(c); **Russell v. Orr**, 700 So. 2d 619, 622 (Miss. 1997).

## ANALYSIS

### I. Statute of Limitations

¶13. It is undisputed that § 15-1-49 of the Mississippi Code applies to this action. "All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-

49(1) (Rev. 2003). What is disputed in this case is when exactly the three-year statute of limitations began to run. In other words, when did the cause of action in this case "accrue?"

¶14. The plaintiffs set forth several different arguments contending that the action filed January 5, 2004, was within the statute of limitations. We address each in turn.

**A. The "continuous representation rule"**

¶15. The plaintiffs argue that in Mississippi, the rule for an attorney malpractice case is that the statute of limitations does not begin to run against the clients' claims until the representation regarding the transaction at issue is complete. To back up this argument, they cite *Stevens v. Lake*, 615 So. 2d 1177, 1182 (Miss. 1993), stating that "the premise of 'the continuous representation rule' is that 'the cause of action in an attorney malpractice case should not accrue until the attorney's representation *concerning a particular transaction* is terminated.'" Applying this rule, the plaintiffs contend that the representation concerning the AHP settlements would not have been complete until the clients received the settlement funds on January 26, 2001, thus bringing the action filed January 5, 2004 within the three-year statute of limitations.

¶16. While the plaintiffs' argument does make sense, this Court has never given any real indication that it follows the "continuous representation rule." It is true that *Stevens* does discuss the rule, but the discussion consisted of no more than an explanation of what the rule is and why it could not apply to the facts presented in that case.[6] No Mississippi authority

---

[6] In *Stevens*, the plaintiffs were suing their lawyers for malpractice. The plaintiffs argued the "continuous representation rule," and the Court simply clarified that, in order to

7

was cited regarding the rule, and the Court drew its explanation of the rule from a treatise.[7]

This rule was also cited in *Champluvier v. Beck*, 909 So. 2d 1061, 1063 (Miss. 2004). However, just as *Stevens* did, *Champluvier* merely pointed out that the rule could not apply to the set of facts in that case without giving any indication that the rule has ever been applied in Mississippi.

¶17.   A review of the cases reveals that Mississippi does not follow the "continuous representation rule."  While the Court has briefly discussed the rule when the argument has been presented, it is clear that this Court follows the discovery rule.

### B. The discovery rule

¶18.   The plaintiffs also point out that this Court has recognized the discovery rule in legal malpractice cases.  According to palintiffs, if the Court applies the discovery rule in this case, the statute of limitations would not have started running until January 26, 2001, when they received their settlement proceeds.

¶19.   In *Smith v. Sneed*, 638 So. 2d 1252, 1253 (Miss. 1994), this Court held that "the statute of limitations in a legal malpractice action properly begins to run on the date the client learns or through the exercise of reasonable diligence should learn of the negligence of his lawyer."  This Court has said that the discovery rule is to be applied when "the plaintiff will

---

meet the qualifications of "continuous representation" for the purposes of the rule, the continued representation must be in the same matter upon which the malpractice action is based.

[7] 2 Mallen and Smith, Legal Malpractice § 18.12, at 115 (3d ed. 1989).

be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question," or it may be applied "when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *McCain v. Memphis Hardwood Flooring Co.*, 725 So. 2d 788, 794 (Miss. 1998) (citing *Sneed*, 638 So. 2d at 1257; *Staheli v. Smith*, 548 So. 2d 1299, 1303 (Miss. 1989)). Given this precedent, it must be determined whether the alleged injury in this case was secretive or inherently undiscoverable, or in the alternative, whether the plaintiffs, as laymen, could not have reasonably been expected to perceive the injury at the time of the alleged wrongful act.

¶20. The "secretive or inherently undiscoverable" standard is applicable where there is some piece of physical evidence that is the subject of the test. See *Staheli*, 548 So. 2d at 303. There is no allegation in this case that there was any physical evidence that was undiscoverable. Therefore, we will focus on the layman standard.

¶21. In *Sneed*, this Court explained that the discovery rule was the proper test for deciding when the statute of limitations for a legal malpractice action begins to run. This Court explained:

> An attorney is obligated to use skill, prudence, and diligence commonly exercised by practitioners of his profession. The California Supreme Court has recognized that a "corollary to this expertise is the inability of the layman to detect its misapplication; the client may not recognize the negligence of the professional when he sees it." *Neel v. Magana, Olney, Cathcart & Gelfand*, 6 Cal. 3d 176, 188, 491 P.2d 421, 428, 98 Cal. Rptr. 837, 844 (1971). A Texas commentator states: "It is unrealistic to expect a layman to perceive an injury at the time of the negligent act or omission of his attorney." Ward, Legal Malpractice in Texas, 19 S. TexL.J. 587, 613 (1978).

9

*Sneed*, 638 So. 2d at 1257 (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645-46 (Tex. 1988)). In *Sneed* we went on to say that if the discovery rule were not followed, "the client could protect himself fully only by ascertaining malpractice at the moment of its incidence. To do so, he would have to hire a second attorney to observe the work of the first. This costly and impractical solution would but serve to undermine the confidential relationship between attorney and client."*Id.* at 1257-58.

¶22.    The plaintiffs claim that they relied on the judgment, loyalty, integrity, truthfulness, and competence of Loyacono and Verhine in handling the claims against AHP and that because Loyacono and Verhine misled them, they had insufficient information to know of the alleged wrongdoing at the time Loyacono and Verhine supposedly committed malpractice. However, they contradict themselves by stating that on December 27 and 28, 2000, worried that they had been misled by Loyacono and Verhine concerning the AHP settlements, several of the plaintiffs contacted Keith Morgan. This shows that some of the plaintiffs not only had sufficient information to know of an alleged wrongdoing, but that they actually suspected wrongdoing and sought the advice of another lawyer. The circuit court stated in its findings of fact that in late December 2000,  Varas and Morgan actually contacted several of the plaintiffs, tried to get them to fire Loyacono and Verhine and retain the services of Varas and Morgan, tried to find out how much money AHP had offered the plaintiffs, and tried to persuade the clients to reject the settlement offers.

¶23.    Given these facts, some of the plaintiffs, as laymen, not only suspected wrongdoing by Loyacono and Verhine in December 2000, but they had strong enough feelings about it

10

to contact another attorney. If this was not enough to be considered notice of wrongdoing, then the actions taken by Varas and Morgan in contacting the plaintiffs and trying to convince them to leave Loyacono and Verhine should have been enough to put those plaintiffs on notice. For these plaintiffs, any alleged wrongdoing by Loyacono and Verhine was "discovered" for the purposes of the discovery rule in December 2000, and those claims would be barred by the statute of limitations.

¶24. However, this may not be the case with all of the plaintiffs. The record points out that "Varas and Morgan attempted to contact *many* of...[the] clients" and that "*several* plaintiffs called attorney Keith Morgan." There is never any mention of which of the plaintiffs contacted Keith Morgan or were contacted by Varas and Morgan. Therefore, the record does not establish that all of the plaintiffs had notice of any of the alleged wrongdoing prior to January 1, 2001. The Hinds County Circuit Court was closed from January 1, 2004, through January 4, 2004. If there are any plaintiffs who did not have notice of the alleged wrongdoing of Loyacono and Verhine prior to January 1, 2001, then the claims of those plaintiffs would not be barred by the statute of limitations.

¶25. The testimony that took place on January 18, 2002, does show that two specific plaintiffs had notice of alleged wrongdoing by Loyacono and Verhine for the purposes of the discovery rule. Sarenthia Channel and Molly Robinson both testified that before signing their settlement agreements, they suspected Loyacono and Verhine of wrongdoing.[8]

---

[8] Sarenthia Channel's settlement agreement was signed on December 28, 2000, and Molly Robinson's was signed on December 22, 2000.

Sarenthia Channel even testified that she contacted Keith Morgan and that he advised her not to sign the settlement agreement which had been negotiated by Loyacono and Verhine. She further testified that she told Loyacono "to his face" that she did not trust him. Molly Robinson made it clear that she felt that she was being misrepresented before she signed her settlement agreement as well. Because plaintiffs Channel and Robinson believed Loyacono and Verhine were guilty of wrongdoing in December of 2000, the statute of limitations began to run as to their legal malpractice claims at that time, and their claims are barred.

¶26.     While other plaintiffs who testified at this hearing made clear that they felt as though they had been misled by Loyacono and Verhine, there was no specific reference to the time at which the knowledge of alleged wrongdoing was acquired. Therefore, this Court cannot say whether these plaintiffs had notice of any alleged wrongdoing by Loyacono and Verhine before January 1, 2001. This issue must be tried on remand.

### C. Fraudulent concealment

¶27.     Finally, the plaintiffs claim that the statute of limitations was tolled in this case because Loyacono and Verhine fraudulently concealed their negligence. Restating the discovery standard from **Smith v. Sneed**, *supra*, the plaintiffs state that because of Loyacono and Verhine's fraudulent concealment, they were unable to learn of the alleged malpractice before January 2001.

¶28.     "[F]raudulent concealment of a cause of action tolls its statute of limitations." **Robinson v. Cobb**, 763 So. 2d 883, 887 (Miss. 2000) (quoting **Myers v. Guardian Life Ins. Co. of America, Inc.**, 5 F. Supp. 2d 423, 431 (N.D. Miss. 1998)). This Court went on to say

that "[t]he fraudulent concealment doctrine 'applies to any cause of action.'" *Id.* This Court recently addressed the fraudulent concealment doctrine in *Stephens v. Equitable Life Assurance Society of U.S.*, 850 So. 2d 78, 83-85 (Miss. 2003).

¶29.    In *Stephens*, this Court cited Miss. Code Ann. § 15-1-67(Rev. 2003), stating: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." *Id.* at 83. The Court then laid out a two-part test for determining whether there has been fraudulent concealment: the party purporting that there was fraudulent concealment must show that "(1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) and due diligence was performed on their part to discover it." *Id.* at 84. The affirmative act must in fact be designed to prevent the discovery of the claim. *Robinson*, 763 So. 2d at 887 (quoting *Reich v. Jesco, Inc.*, 526 So. 2d 550, 552 (Miss. 1988)).

¶30.    The plaintiffs' claim of fraudulent concealment is hollow. In its conclusions of law, the circuit court found that they had presented no evidence to satisfy the test for fraudulent concealment. On appeal, the plaintiffs merely state that Loyacono and Verhine fraudulently concealed their alleged negligence. The plaintiffs offer no evidence to back up this bare assertion. While they do make allegations of fraudulent and negligent acts committed by Loyacono and Verhine, the plaintiffs make no offering of any affirmative act designed to conceal a cause of action. Even if there had been an allegation of an affirmative act designed

13

to conceal the cause of action, it would make no difference because the question would still be whether the alleged negligence was "discovered" for the purposes of the discovery rule. The plaintiffs' claim of fraudulent concealment to toll the statute of limitations is without merit.

## II. Res Judicata and Collateral Estoppel

### A. Res judicata

¶31. The trial court held that the plaintiffs' claims against Loyacono and Verhine were barred by res judicata. Res judicata "reflects the refusal of the law to tolerate a multiplicity of litigation." *Little v. V&G Welding Supply, Inc.*, 704 So. 2d 1336, 1337 (Miss. 1997). "For the bar of res judicata to apply in Mississippi, there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom a claim is made." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005) (citing *Quinn v. Estate of Jones*, 818 So. 2d 1148, 1151 (Miss. 2002) and *Dunaway v. W.H. Hopper & Assocs., Inc*, 422 So. 2d 749, 751 (Miss. 1982)). The absence of any one of these four identities "is fatal to the defense of res judicata." *Harrison*, 891 So. 2d at 232 (citing *Estate of Anderson v. Deposit Guar. Nat'l Bank*, 674 So. 2d 1254, 1256 (Miss. 1996)). We need only address the identity of the cause of action.

*Identity of the cause of action*

¶32.   One of the main concerns with this identity is the prevention of "claim-splitting."

Pointing out the relationship of this identity with the doctrine of claim preclusion, this Court

has stated:

> Where a judgment is rendered, whether in favor of the plaintiff or the
> defendant, which precludes the plaintiff from thereafter maintaining an action
> upon the original cause of action, he cannot maintain an action upon any part
> of the original cause of action, although that part of the cause of action was not
> litigated in the original action, except...(c) where the defendant consented to
> the splitting of the plaintiff's cause of action.

*Harrison*, 891 So. 2d at 233-34 (quoting *Alexander v. Elzie*, 621 So. 2d 909, 910 (Miss.

1992)).  The Court went on to say "'this principle prohibiting [re-litigation] requires that the

plaintiff bring in the first forum every point which properly belongs to the subject of

litigation, and which the parties, by exercising reasonable diligence, might have brought

forward at the time.'"  *Harrison*, 891 So. 2d at 234 (quoting *Hayes v. Solomon*, 597 F.2d

958, 982 (5th Cir. 1979)).  "'[I]n accordance with public policy, partially to conserve the

courts' time but probably in the main to prevent the hardship upon [a] defendant of

unnecessary piecemeal litigation, a single cause of action cannot be split so as to be properly

made the subject of different actions....'"*Id.*

¶33.   While this cause of action did arise out of the same body of operative fact as the

motions filed in the previous cases,[9] a finding that the identity of the cause of action is met

in this case for the purposes of res judicata would not be in keeping with the purpose for the

---

[9] See *Harrison*, 891 So. 2d at 234 ("In order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated."

15

res judicata doctrine. In filing the malpractice action against Loyacono and Verhine, the plaintiffs did not split a claim. Rather, the malpractice action was separate and distinct from the original claims against AHP. If the plaintiffs had filed a case against Loyacono and Verhine alleging negligence, and, after the conclusion of that case, filed a second action against Loyacono and Verhine alleging fraud, the second action could be properly barred by the doctrine of res judicata or claim preclusion. However, this is an original action alleging legal malpractice, and further, there was no specific ruling made in the previous cases as to any negligence or fraud allegedly committed by Loyacono and Verhine. The only ruling was that the settlement agreements were valid and enforceable. To allow this suit would not subject Loyacono and Verhine, who were not defendants in the previous cases, to repetitious or unnecessary litigation; and therefore, the requirement of identity of the cause of action is not met. Because the absence of one identity is dispositive of the defense of res judicata, this Court need not address the remaining identities.

### B. Collateral estoppel

¶34. Collateral estoppel is very similar to res judicata. However, "under the doctrine of collateral estoppel, '[an] appellant is precluded from relitigating in the present suit specific questions actually litigated and determined by and essential to the judgment in the prior suit, even though a different cause of action is the subject of the present suit,'" and "'collateral estoppel, unlike the broader question of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated.'" *Mayor and Bd. of Aldermen v. Homebuilders Ass'n of Miss., Inc.*, 932 So. 2d 44, 59 (Miss. 2006)

16

(quoting *Lyle Cashion Co. v. McKendrick*, 227 Miss. 894, 87 So. 2d 289, 293 (1956); *Dunaway*, 422 So. 2d at 751).

¶35. In support of their assertion that the plaintiffs' claims are barred by collateral estoppel, Loyacono and Verhine rely on the motions made in the previous cases. Loyacono and Verhine claim that "the crux of [Appellants'] claims–that Loyacono and Verhine acted wrongfully in negotiating the settlement agreements–was decided against them by the court in the Prior Actions on the rulings on the motions regarding the validity of the settlement agreements." However, there is nothing to back up this assertion. In the orders denying the motions in the previous cases, the trial court made no finding regarding negligence or fraud by Loyacono and Verhine. Rather, the court merely stated in each order that a "meeting of the minds" had taken place in each settlement negotiation, that each plaintiff had signed their agreement, and that the agreements were valid and binding. The relief sought in the present action is not the setting aside of the settlement agreements but compensatory damages for the alleged malpractice of Loyacono and Verhine. Therefore, this is a distinct action, not previously litigated to a final determination, and the claims of the plaintiffs are not barred by collateral estoppel.

### III. Waiver and Estoppel

¶36. The trial court found that the plaintiffs' claims were barred by doctrines of waiver and estoppel. "Waiver is voluntary surrender or relinquishment of some known right, benefit or advantage; estoppel is the inhibition to assert it." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.,* 743 So. 2d 954, 964 (Miss. 1999) (quoting Black's Law

17

Dictionary 538 (6th ed. 1990)). In order to establish that a claim is barred by estoppel, three essential elements must be proven: "(1) a representation that later proves to be untrue, (2) an action by the person seeking to invoke the doctrine, such action being taken in reliance on the representation, and (3) a resulting detriment to that person arising from his action." *Miss. Dep't of Pub. Safety v. Carver*, 809 So. 2d 713, 718 (Miss. 2001) (citing *Town of Florence v. Sea Lands, Ltd.*, 759 So. 2d 1221, 1229 (Miss. 2000)).

¶37. Neither the trial court's judgment, nor the defendants' identical brief explain how these elements are met in this case. However, some facts are stated that could possibly apply. Loyacono and Verhine state that they were induced to "consummate the settlement agreements with AHP and to disperse the settlement proceeds to Plaintiffs." So, taking these facts as they are stated, one could conclude that the plaintiffs represented to Loyacono and Verhine that they wanted to settle and that Loyacono and Verhine took action relying on that representation to negotiate a settlement agreement with AHP. This would satisfy the first two requirements for estoppel to apply. However, there are no facts stated to show, and there are no specific allegations asserting that Loyacono and Verhine suffered any detriment by negotiating the settlement agreements with AHP on behalf of the plaintiffs. On the contrary, Loyacono and Verhine were paid a fee and actually prospered from the negotiations and settlements. Therefore, the third requirement not being met, the plaintiffs' claims were not barred by estoppel.

¶38. Nor does this Court accept the proposition that, simply because the plaintiffs accepted the settlement funds, that they waived any right to sue for malpractice. As discussed earlier,

18

the discovery rule applies to legal malpractice claims and a layman may not discover the wrongful conduct of an attorney until after a case has been settled or otherwise concluded. Therefore, clients maintain their right to sue for malpractice even after accepting settlement funds.

### IV. Accord and Satisfaction and Settlement and Release

¶39. Finally, the trial court found that the plaintiffs' claims were barred by accord and satisfaction and settlement and release. Under Mississippi law, there are four elements of accord and satisfaction: "(1) something of value offered in full satisfaction of a demand; (2) accompanied by acts and declarations as amount to a condition that if the thing is accepted, it is accepted in satisfaction; (3) the party offered the thing of value is bound to understand that if he takes it, he takes subject to such conditions; and (4) the party actually does accept the item." *Medlin v. Hazlehurst Emergency Physicians*, 889 So. 2d 496, 498 (Miss. 2004) (citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003); *Wallace v. United Miss. Bank*, 726 So. 2d 578, 589 (Miss. 1998); *Alexander v. Tri-County Co-op*, 609 So. 2d 401, 404-05 (Miss. 1992)).

¶40. In the present case, the plaintiffs were offered settlements of various amounts in satisfaction of the demands that were made against AHP. They signed settlement agreements releasing AHP and agreeing that the settlements were in full satisfaction of those demands. The settlements were accepted by the plaintiffs. Loyacono and Verhine contend that this set of circumstances meets the criteria for accord and satisfaction. However, Loyacono and Verhine's logic is flawed.

19

¶41. The plaintiffs did not demand anything of Loyacono and Verhine except reasonable care in legal service. The settlements released AHP, not Loyacono and Verhine, from liability and future claims. Furthermore, Loyacono and Verhine provided nothing of value to the plaintiffs. Therefore, accord and satisfaction does not bar the plaintiffs' claims.

¶42. The trial court also cited Mississippi's "strong and abiding policy favoring settlement" and stated that "permitting [plaintiffs] to bring a second action would undercut Mississippi's clear policy of favoring and enforcing settlement agreements by allowing a release to be nullified at the whim of the party that agreed to the release of any future claims." This concern is echoed by Loyacono and Verhine. Again, Loyacono and Verhine try to put themselves in the position of AHP, and again, we reject their argument. The releases signed by the plaintiffs in the previous cases list a number of "Released Parties" who are immune from liability in future actions based on the subject matter of the previous actions. None of the categories of released parties include Loyacono and Verhine. The settlement was not made with Loyacono and Verhine, but with AHP. Therefore, no policy favoring settlement would be undermined by allowing the plaintiffs to go forward with their suit against Loyacono and Verhine. Thus, neither accord and satisfaction nor settlement and release bar the plaintiffs claims against Loyacono and Verhine.

## CONCLUSION

¶43. The record does not establish that plaintiffs' claims are all barred by the statute of limitations. If a plaintiff knew or should have known of the alleged wrongdoing of Loyacono and Verhine prior to January 1, 2001, that plaintiff's claim is barred. However, if a plaintiff

had no notice, or did not have notice until January 1, 2001 or later, then that claim is not barred. Thus the claims of Sarenthia Channel and Molly Robinson are barred by the statute of limitations. Therefore, the circuit court's judgment is affirmed to the extent that it granted summary judgment against Sarenthia Channel and Molly Robinson. In all other respects, the circuit court's judgment is reversed and remanded for trial consistent with this opinion.

¶44.    **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**