# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01547-SCT

*PEGGY CRIST, THERESEA EDWARDS,*
*PATRICIA GUTHRIE, JANE HAMILTON, HELEN*
*HEARD, BERTHA MIXON, JENNIE PARKER,*
*JAMES REED, JR., GLENDA RIVERS, PAMELA*
*ROBINSON, KAREN THORNTON, VIRGINIA*
*TOWNSEND, VERA WELLS, MARY*
*WHITTINGTON, LINDA WILLIAMS AND PEGGY*
*WINTERS*

*v.*

*PAUL KELLY LOYACONO AND E. SCOTT*
*VERHINE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2009 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID L. MINYARD |
| | TIFFANY LEIGH KILPATRICK |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | CHRISTY MICHELLE SPARKS |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 04/21/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON, P.J., AND KITCHENS, J.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Sixteen former clients sued two lawyers who had represented them in mass-tort litigation, claiming the lawyers had breached their fiduciary duty by prematurely settling their cases in order to maximize attorney fees. Responding to a motion for summary judgment, the former clients produced a witness—a mass-tort lawyer whom the defendant

lawyers had associated, and then fired—who testified that he had settled numerous similar cases for much more than the former clients received. The lawyer also produced a settlement document he had prepared, in part, by using another lawyer's matrix as a go-by.

¶2. The trial judge—finding that the lawyer's testimony and matrix were inadmissible hearsay, and that the clients were required to, but could not, prove they would have won their cases at trial—granted summary judgement. We hold that the clients were not required to prove they could have won their underlying case in order to pursue their breach of fiduciary claim against their lawyers, and that the trial court erred in excluding the lawyer's testimony.

**FACTS**

¶3. Additional facts and background of this twelve-year-old case, on its second trek to this Court, were previously reported.[1]

¶4. Upon learning that attorney Keith Morgan was amassing clients in litigation against American Home Products Corp.[2] ("AHP"), attorney E. Scott Verhine advised Morgan that he could produce some clients. Verhine, together with attorney Paul Kelly Loyacono, signed up fifty-five clients who claimed to have used AHP's Fen-Phen product.

¶5. Verhine and Loyacono then associated Morgan, agreeing that he would receive seventy-five percent of the attorney fees generated by the fifty-five clients. When Morgan filed suit, neither Loyacono nor Verhine signed the complaint as attorneys of record.

---

[1] Our first review of this case involved a statute-of-limitations issue, and we determined some of the plaintiffs were time-barred. *See Channel v. Loyacono*, 954 So. 2d 415 (Miss. 2007). The instant case presents the same underlying legal-malpractice claims of the plaintiffs whose claims were not time-barred by *Channel*.

[2] Now known as Wyeth, Inc.

¶6. After roughly a year, Morgan and his law firm engaged AHP in settlement negotiations concerning hundreds of their clients, including the fifty-five provided by Loyacono and Verhine. Shortly thereafter, Loyacono and Verhine contacted AHP and began secretly negotiating a settlement of their fifty-five clients' cases. Of the fifty-five original clients, thirty-four (including appellants) accepted settlement offers obtained directly by Loyacono and Verhine. Under these settlements, Loyacono and Verhine received one-hundred percent of the attorney fees.

¶7. Morgan developed a "settlement matrix" which classified his clients into thirteen graduated levels based on injury type and severity. A $39-million settlement was reached with AHP. Of the twenty-one clients that did not accept settlements negotiated by Loyacono and Verhine, some were part of the settlement negotiated by Morgan *et al.* According to Morgan's sworn testimony and his matrix, the plaintiffs that did accept the settlements negotiated by Loyacono and Verhine would have received larger awards had they remained part of the Morgan settlement group.

¶8. The plaintiffs that did accept the offers negotiated by Loyacono and Verhine filed suit against them alleging, among other things, breach of fiduciary duty in the manner in which they conducted the settlement negotiations and apportioned the proceeds.

¶9. Following discovery, Loyacono and Verhine moved *in limine* to exclude Morgan's settlement matrix and any testimony from Morgan about his settlement negotiations on the grounds that it was hearsay and lacked supporting documents. Loyacono and Verhine also moved for summary judgment on all the claims, arguing in relevant part that the plaintiffs had not produced any evidence that they would have succeeded in the underlying case

3

against AHP, which Loyacono and Verhine argued was essential to any legal-malpractice claim. They also argued that the exclusion of the Morgan settlement matrix and related testimony meant that the plaintiffs no longer had any proof of damages, another essential element.

¶10. The trial court agreed, finding that Morgan's matrix and testimony "were based, to a degree, on another attorney's matrix" and were "inadmissible on the grounds of hearsay, lack of any supporting documentation, the failure to designate Morgan as an expert, and speculation." The court then granted the defendants' motion for summary judgment because "Plaintiffs were required to make out a prima facie case that, if Plaintiffs had not entered into the settlements at issue, they would have prevailed on their underlying claims against AHP, _and_ they would have been awarded a monetary sum greater than the settlements negotiated by Defendants."[3]

¶11. The plaintiffs appealed, presenting two issues:

1. Whether a legal-malpractice claim based on a breach-of-fiduciary-duty theory requires proof of success and a larger award in the underlying action; and

2. Whether the trial court abused its discretion in excluding the Morgan settlement matrix and all of Morgan's testimony relating to settlement negotiations.

**ANALYSIS**

1. *Whether a Legal-Malpractice Claim Based on a Breach-of-Fiduciary-Duty Theory Requires Proof of Success and a Larger Award in the Underlying Action.*

---

[3] Emphasis original.

4

¶12.    In reviewing a trial court's grant or denial of summary judgment, the well-established standard of review is *de novo*.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4]  The evidence must be viewed in the light most favorable to the party against whom the motion has been made.[5]

¶13.    Review of a trial court's suppression of evidence is reviewed under an abuse-of-discretion standard.[6]  Even where an abuse of discretion on an evidentiary issue is found, "this Court 'will not reverse unless the error adversely affects a substantial right of a party.'"[7]

**A client's breach-of-fiduciary-duty claim against an attorney does not require proof that the client would have won at trial.**

¶14.    It is true – and well established – that a plaintiff in a *negligence-based* malpractice action must establish proximate cause by the so-called "trial-within-a-trial" test.  That is to say, the client "must show that, but for [his] attorney's negligence, he would have been successful in the prosecution or defense of the underlying action."[8]  But we have never required a legal-malpractice plaintiff alleging breach of fiduciary duty to establish that, but for the breach, the plaintiff would have won the underlying case.  Rather, the proof of

---

[4] Miss. R. Civ. P. 56(c).

[5] *Duckworth v. Warren*, 10 So. 3d 433, 436–37 (Miss. 2009) (internal citations and quotations of cases omitted).

[6] *Haggerty v. Foster*, 838 So. 2d 948, 958 (Miss. 2002).

[7] *Id.* (quoting *In re Estate of Mask*, 703 So. 2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995)).  *See also* M.R.E. 103(a).

[8] *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1215 (Miss. 1996).

proximate cause in such cases is "to be tailored to the injury the client claims and the remedy he elects."[9]  This means that expert testimony is not always necessary.[10]

¶15.    The law recognizes a clear distinction between allegations of legal malpractice based on negligence (sometimes called a breach of the standard of care) and those based on breach of fiduciary duty (sometimes called a breach of the standard of conduct).[11]  When a legal-malpractice claim is based on an allegation of breach of fiduciary duty, the plaintiff must establish (1) the existence of an attorney-client relationship; (2) the acts constituting a violation of the attorney's fiduciary duty; (3) that the breach proximately caused the injury; and (4) the fact and extent of the injury.[12]

¶16.    This dichotomy is consistent with the differing characters of these two theories. Because attorneys are afforded a degree of professional autonomy, proof of success in the underlying case is an appropriate test for proximate cause in a negligence-based action because it ensures that attorneys are only held professionally liable where their failures to adhere to the standard of care actually impacted the plaintiff's interests in the case.  But an

---

[9] *Singleton v. Stegall*, 580 So. 2d 1242, 1245 (Miss. 1991).

[10] *See, e.g., Lane*, 873 So. 2d 92, 99 (Miss. 2004) ("[W]hen the claim is for breach of the standard of conduct [i.e. breach of fiduciary duty], we conclude that lack of expert testimony should not preclude the issue from being heard by a jury.").

[11] *See, e.g., Lane*, 873 So. 2d at 98 ("legal malpractice may be a violation of the standard of care . . . or the breach of a fiduciary duty") (citing *Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255, 284 (Miss. 1988) (Prather, J., dissenting)).

[12] *Foster*, 528 So. 2d at 284–85 (citing *Hickox v. Holleman*, 502 So. 2d 626, 634 (Miss. 1987); *Hutchinson v. Smith*, 417 So. 2d 926 (Miss. 1982); *Thompson v. Erving's Hatcheries, Inc.*, 186 So. 2d 756 (Miss. 1966)).

attorney's breach of his fiduciary duties to his client may cause injury to the client entirely separate from the merits of the underlying case.

¶17. To illustrate, suppose a lawyer receives a client's settlement check in a doubtful claim, but procrastinates negotiating the check. Meanwhile, the defendant files bankruptcy, the check is no longer good, and the client receives nothing. It is no defense to the client's lawsuit against the procrastinating lawyer that the client can not prove that he would have won at trial because the underlying claim was doubtful. The same is true here. The fiduciary-duty claims against Loyacono and Verhine survive, even absent a showing that the plaintiffs would have won the underlying Fen-Phen lawsuit against AHP.

**Morgan's testimony was not hearsay, and was sufficient to establish a genuine issue of material fact as to whether the clients would have received a larger settlement.**

¶18. The defendant-attorneys argue in the alternative that summary judgment was proper because the plaintiffs' only proof of damages—Keith Morgan's settlement matrix and related testimony—is inadmissible. But even if we agreed that the trial court properly excluded the matrix, it was not the only probative evidence of damages. In his deposition, Morgan testified regarding the amounts actually received by his clients from AHP. This testimony was not an out-of-court statement, and was sufficient to create a factual question for the jury.

¶19. Because the standard applied by the trial court was overly restrictive, we reverse the grant of summary judgment as to the fiduciary-duty claims and remand the matter to the trial court for a ruling on the summary-judgment motion applying the proper standard.[13]

---

[13] The plaintiff-appellants concede that summary judgment was properly granted as to their negligence-based claims.

7

*2.     Whether the Trial Court Erred in Excluding Keith Morgan's Matrix and Testimony.*

¶20.    The trial court ruled *in limine* that the settlement matrix prepared by Keith Morgan, along with all "related testimony" was inadmissible hearsay, inasmuch as it was partly based on a similar matrix prepared by another attorney. The court also apparently considered the matrix and related testimony to be opinion evidence within the scope of M.R.E. 702, and ruled that since Morgan was not designated as an expert, he could not give such opinions. The plaintiffs argue that the excluded evidence was fact, not opinion, and that Morgan's testimony was based on personal knowledge and therefore not hearsay.

¶21.    Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.[14] So for an out-of-court statement to be admissible, it must either be offered for some other proper purpose, or fall into one of the enumerated exceptions to the general hearsay rule. For the purposes of analysis, the written matrix is considered separately from Morgan's related testimony.

### A.     Admissibility of the Morgan Settlement Matrix

¶22.    The Morgan Matrix is obviously an out-of-court statement. The document shows the thirteen classifications and corresponding settlement amounts that Morgan used to distribute the $39-million payment received from AHP. Therefore, if offered for the purpose of establishing the fact of those classifications and settlement amounts, it would certainly constitute hearsay. The plaintiff-appellants did not argue in the trial court—nor do they argue on appeal—that the Morgan Matrix nevertheless falls into one of the hearsay exceptions that would allow the matrix to be admitted into evidence, so it is not necessary

_____

[14] M.R.E. 801(c).

to continue the inquiry. The trial judge did not abuse his discretion in ruling that the Morgan Matrix was hearsay and therefore inadmissible as evidence.

¶23.    We emphasize that this holding is limited solely to the issue of the admissibility of the Morgan Matrix as evidence. We offer no opinion as to the admissibility of the matrix for other purposes, such as those contemplated by the exceptions listed under M.R.E. 803.

### B.    Admissibility of Morgan's Testimony Regarding Settlement

¶24.    Unlike the matrix, Morgan's in-court testimony about how he handled the settlement was not hearsay since it was not an out-of-court statement. Although Morgan stated in his deposition that he devised his matrix, in part, by referring to a similar matrix prepared by another attorney, the mere existence of the document would not prevent Morgan from testifying about how he personally determined the settlement values of each of his clients' cases and the amounts of his previous settlements. Based on the arguments presented at trial and here, Morgan's deposition testimony was not inadmissible hearsay.

¶25.    The question then is whether Morgan needed to be qualified as an expert to offer his testimony. Under our rules, expert witnesses may offer opinion testimony where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."[15]

¶26.    Typically, an expert witness is an "outsider" to the case who evaluates the evidence in an attempt to explain it to the jury. Before experts may deliver opinions to the jury, experts must be vetted by the court and must satisfy certain criteria. By contrast, a fact

---

[15] M.R.E. 702.

9

witness may be virtually any competent person[16] whose testimony is based on personal knowledge.[17]  Morgan was not qualified as an expert witness, but his testimony was based on personal knowledge.  In other words, Morgan's proffered testimony was a matter of fact rather than opinion, and the trial court erred in excluding it.

¶27.    The defendants argue (and the trial court found) that Morgan's estimation of the value of his clients' claims was "speculative" opinion testimony that may only be offered by an expert witness under M.R.E. 702.  But the plaintiffs were not offering Morgan's testimony to establish his opinion of the value of their claims.  Rather, it was being offered to show how Morgan in fact distributed the settlement money to his clients.  While those decisions may have been based on Morgan's opinions at the time, the decision-making process and the resultant matrix was, and is, a matter of fact.

¶28.    From the vantage point of trial, Morgan's past settlement-negotiation process is a matter of fact within Morgan's personal knowledge and the rules provide no reason why he should not be allowed to testify about it.   Therefore, it was not hearsay nor was it necessary to qualify Morgan as an expert before he could testify about the matter.

¶29.    But even if Morgan's testimony did constitute opinion rather than fact, our rules allow lay opinion testimony of this nature.  Under Rule 701, a lay witness may offer opinion testimony that is "(a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Of these

---

[16] M.R.E. 601.

[17] M.R.E. 602.

three requirements, the first two are easily satisfied. Morgan's settlement-negotiation process is clearly based on Morgan's perception and was helpful to the determination of a fact in issue— indeed, the trial court essentially ruled that the plaintiffs had no case without it. The question then turns on whether Morgan's opinions were "based on scientific, technical, or other specialized knowledge" usually reserved for experts.

¶30.    On this point, the defendants actually make the strongest argument in favor of the admissibility of Morgan's testimony. They observe that "Morgan has admitted that *he* was the person who exercised *his discretion* to decide how much of AHP's block/lump sum settlement monies would be allocated to a given client of his."[18] And later:

> At each point in [the process of creating his settlement matrix], Morgan came up with *his opinions* on, *e.g.*, how many injury classification levels there should be, what should be the criteria for each level, which of his clients fell into which level, and what did he think was the value or worth of a claim that fell within a given level, and how much money he was going to allocate to a given level and a client in that level.[19]

¶31.    The defendants further emphasize that Morgan devised his matrix without consulting any medical experts.

¶32.    Obviously, an opinion as arbitrary as the defendants suggest would never satisfy the strict requirements of expert witnesses under Rule 702 and our caselaw. And this is precisely why Rule 701 applies. As long as the opinion is not based on the kind of technical expertise required by Rule 702, a lay witness may offer opinion testimony if the other parts of the rule are met, as they are here. Since Morgan's discretionary disbursement of the settlement funds

---

[18] Emphasis in original.

[19] Emphasis in original.

to his clients did not implicate the kind of specialized knowledge implicated by Rule 702, to the extent his testimony constitutes opinion, it was admissible under Rule 701. Therefore, the trial court erred in excluding Morgan's testimony regarding how he devised the settlement matrix and how he disbursed the settlement funds to his clients.

## CONCLUSION

¶33. The trial court erred in applying a negligence standard to the plaintiffs' claims of breach of fiduciary duty, and summary judgment is reversed and remanded as to the breach-of-fiduciary-duty claims. The evidentiary ruling is reversed to the extent it excluded Morgan's in-court testimony regarding the settlement negotiation and payment process he employed. The case is remanded to the trial court for further proceedings consistent with this opinion.

¶34. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., NOT PARTICIPATING.**