# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 14, 2020

Lyle W. Cayce
Clerk

No. 20-60310

Cascade Capital Group, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Livingston Holdings, L.L.C.; Chestnut Developers, L.L.C.; David Landrum; Michael L. Sharpe, also known as Mike Sharpe,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-952

Before Jolly, Stewart, and Oldham, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant Cascade Capital Group, L.L.C. ("Cascade") brought suit against Defendants-Appellees Livingston Holdings, L.L.C., Chestnut Developers, L.L.C., David Landrum, and Michael Sharpe

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60310

("Borrowers") due to their default on a Promissory Note and subsequent Forbearance Agreement. Following a bench trial, the district court determined that Borrowers breached the parties' enforceable contract, but that Cascade had also breached its fiduciary duty to Livingston, Chestnut, and Sharpe ("Livingston/Chestnut/Sharpe"). Cascade filed a motion to alter or amend the judgment, which the district court denied. Cascade appeals the district court's final judgment. We AFFIRM.

## I. Facts & Procedural History

In 2008, Borrowers began a project to re-develop the "Old Town" of Livingston, Mississippi. In 2011, Borrowers secured a loan from BankPlus to fund part of the project. Chestnut, who had acquired the land, provided BankPlus with a promissory note in the amount of $978,287.17, secured by a Deed of Trust. Livingston later sought help recapitalizing the project. In July 2012, it engaged the consulting services of Cascade, whose sole member is Mark Calvert.

When Borrowers faced default on their BankPlus loan, Calvert offered them a new loan, with a principal and interest total of $951,147, despite the conflict of interest posed by Calvert serving as both a lender and a financial advisor. Borrowers executed the Promissory Note, which was set to mature in March 2016. In April 2016, Borrowers executed a Forbearance Agreement. The Agreement required a $750,000 payment in December 2016, and purported to release Calvert and Cascade from any claims Borrowers may have against them. The Agreement was amended in July of 2016 to extend deadlines for other payments. Borrowers failed to make the December payment, placing them in default. Cascade filed a lawsuit in December 2017, seeking appointment of a receiver to take possession of Borrowers' property, and a joint and several judgment for the principal and interest due, as well as attorney's fees and collection costs.

No. 20-60310

All Borrowers except for Landrum filed counterclaims against Cascade. In February 2019, the court granted Cascade judgment on the pleadings as to Landrum. The same day, the court granted in part and denied in part Cascade's motion for summary judgment. The court determined that Borrowers had breached their contract, but that there was a genuine issue of fact as to whether Cascade had breached its fiduciary duty. The court, in so concluding, rejected four arguments made by Cascade: (1) that the counterclaims were time-barred, (2) that Borrowers had waived their ability to make these claims by signing the exculpation clause, (3) that Borrowers waived their claims when signing the Forbearance Agreement, and (4) that Borrowers were estopped from repudiating the contracts, as they had benefited from them.

In its final judgment, the court determined that Cascade owed a fiduciary duty to Livingston/Chestnut/Sharpe and had breached it. The court stated that the most "egregious" breach was when Calvert took unsecured debt (including his unpaid professional fees) and collateralized it. This further encumbered the land that previously only secured the BankPlus loan, to Calvert's benefit and his clients' detriment. The court voided the collateralization in order to put the parties in the position they would have occupied but for the breach, and found Livingston/Chestnut/Sharpe jointly and severally liable for $424,329.55, which was the original payoff balance on the BankPlus note. The court further determined that the land now only secured that sum.

Cascade now appeals, arguing that Livingston/Chestnut/Sharpe's claims were time-barred and, in the alternative, that they had waived said claims.

No. 20-60310

## II. Standard of Review

In considering a final judgment from trial without a jury under Federal Rule of Civil Procedure 52, we review the district court's findings of fact for clear error, and we review conclusions of law de novo. *Chandler v. City of Dallas*, 958 F.2d 85, 89 (5th Cir. 1992) (per curiam).

## III. Discussion

*(A) Statute of Limitations*

Cascade argues that any breach of fiduciary duty occurred with the execution of the Promissory Note in 2014, and therefore Livingston/Chestnut/Sharpe's counterclaims fall outside of Mississippi's three-year statute of limitations. Miss. Code Ann. § 15–1–49. Cascade argues that the district court thus improperly applied equitable tolling, citing numerous cases for the proposition that equitable tolling is unavailable in circumstances like these. We disagree.

The district court did not apply equitable tolling in this case, instead determining that Cascade's wrongdoing continued beyond the execution of the Note in 2014, and that therefore the counterclaim was filed within the statute of limitations. Under *Stevens v. Lake*, "continuing or repeated injuries can give rise to liability even if they persist beyond the limitations period for the initial injury." 615 So.2d 1177, 1183 (Miss. 1993) (citing *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990)). *Stevens* is clear that while the principle does not apply "where harm reverberates from a single, one-time act," it is applicable "in situations where the defendant commits repeated acts of wrongful conduct." *Id.* The court stated that they did not find the date of the Note's execution to be the date of the last instance of tortious conduct, stating that "Calvert repeatedly breached his fiduciary duty . . . the formation of the Note was just the first noted instance."

4

Cascade contends that because there is a common causal origin of the breach (the execution of the Note), every wrongful action since reverberated from that origin. Cascade characterizes Calvert's subsequent actions following the Note's execution as a continuing harm, not repeated acts of wrongful conduct. This is inaccurate. The district court noted repeated, discrete acts in which Calvert breached his fiduciary duty, including an example in 2017 where Calvert instructed a bank to refuse to release the property unless Calvert was paid in full, causing Livingston's negotiations with a prospective buyer to fall through. Actions like this cannot be described as merely a reverberating harm from an initial act of wrongdoing, but instead reflect "repeated acts of wrongful conduct." *Stevens*, 615 So.2d at 1183. [1]

The district court did not err in concluding that Livingston/Chestnut/Sharpe's counterclaims were not time-barred.

*(B) Waiver or Forfeiture*

Cascade argues that Livingston/Chestnut/Sharpe's execution of the Forbearance Agreement and subsequent Amendment waived their counterclaims. In support of this proposition, it cites to *Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94 (Miss. 2008). *Holland* held that a plaintiff's renewal of a defaulted note constituted waiver of all claims against the bank,

---

[1] Cascade also argues that the district court improperly applied the "continuous representation rule." It cites to a case where the court rejected a rule that the statute of limitations begins to run on the last day of representation by a lawyer, rather than when the malpractice occurred. *Channel v. Loyacono*, 954 So.2d 415, 420–21 (Miss. 2007). This case is wholly inapplicable, because in that case there was no evidence showing the lawyers committed any negligent or fraudulent acts after the malpractice in question. *Id.* at 420. The district court did not determine that the statute of limitations began running on the last day of representation by Cascade, but rather stated that there were ongoing, repeated acts of breach that occurred within the three years before Livingston/Chestnut/Sharpe brought counterclaims.

including claims for breach of fiduciary duty. *Id.* at 103. However, the fiduciary duty in *Holland* was allegedly created by an escrow agreement that was part of the plaintiff and defendant's ongoing creditor/debtor relationship, and it is therefore distinguishable. *Id.* at 97. As the district court correctly points out, "[t]his fiduciary relationship derives from the separate consulting services agreement, which was not 'remedied' or otherwise contractually by the Agreement[.]" We agree that there is no basis for holding that execution of a Forbearance Agreement can waive claims for breach of fiduciary duty unrelated to the debtor/creditor relationship.

Cascade also argues that the Forbearance Agreement's exculpatory clause waives counterclaims for breach of fiduciary duty. The clause provides that Borrowers:

> release, acquit and forever discharge [Cascade], its predecessors in interest and all [Cascade's] past and present officers, directors, attorneys, affiliates, employees and agents, of and from any and all claims, demands, liabilities, indebtedness, breaches of contract, breaches of duty, or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length (each, a "Released Claim" and collectively, the "Released Claims"), that Borrowers now have or may acquire.

Cascade argues that the district court incorrectly determined that Livingston/Chestnut/Sharpe's signing of this indemnification agreement did not waive their counterclaims for breach of fiduciary duty. It notes that in *Smith Barney, Inc. v. Henry*, the Mississippi Supreme Court determined that the phrase "[a]ny controversy arising out of or relating to" referenced a claimed breach of fiduciary duty. 775 So.2d 722, 726 (Miss. 2001). Cascade also relies on *Russell v. Performance Toyota, Inc.*, 826 So.2d 719, 723 (Miss.

2002) (concluding that arbitration clause language referring to "any controversy or claim arising out of or relating to the vehicle which is the subject of the contract" included claims for breach of fiduciary duty in those circumstances). We agree with the district court that this exculpatory clause failed to waive Livingston/Chestnut/Sharpe's counterclaims.

Both cases cited by Cascade are inapplicable, as they discuss the applicability of arbitration agreements, not the viability of exculpation clauses. This is a meaningful distinction, because "[t]he law does not look with favor on contracts intended to exculpate a party from the liability of his or her own negligence . . . ." *Turnbough v. Ladner*, 754 So.2d 467, 469 (Miss. 1999). While they are sometimes enforceable, "such agreements are subject to close judicial scrutiny and are not upheld unless the intention of the parties is expressed in clear and unmistakable language." *Id.* Further, "[t]he wording of an exculpatory agreement should express as clearly and precisely as possible the *extent* to which a party intends to be absolved from liability." *Id.* (emphasis in original).

Here, the exculpatory clause fails because it does not clearly explain the extent to which Cascade intends to be absolved from liability. The clause and the Forbearance Agreement generally do not acknowledge the consulting relationship between Cascade and Borrowers. Its disclaimer of liability for "breaches of duty" did not specify breaches of fiduciary duty, which may have alerted Borrowers that the clause was intended to cover potential claims Borrowers may have with respect to other aspects of their relationship with Cascade. Borrowers could reasonably have read this clause as only applying to claims relating to lending, as the Forbearance Agreement related only to Borrowers' creditor/debtor relationship with Cascade. It lacks the requisite specificity expected from a successful disclaimer of liability, and therefore is not an effective waiver of Livingston/Chestnut/Sharpe's counterclaims.

Finally, Cascade argues that Borrowers forfeited their counterclaim by failing to exercise their rights at the earliest practicable opportunity. However, Cascade did not make this argument in lower court briefing. Cascade argued to the district court a theory of "quasi-estoppel," where one is prohibited from gaining a benefit under a contract and then avoiding the contract's obligations. This new argument is distinct because while Cascade's quasi-estoppel argument concerns obligations of a contract, this new theory involves rights against a fiduciary. Our court will generally not consider issues raised for the first time on appeal. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009).

The district court did not err in its determination that Livingston/Chestnut/Sharpe's counterclaims were not waived or forfeited.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's final judgment.