MYERS, P.J.,
for the Court.
¶ 1. Lillie Poe, Mae Helen Wethers Douglass, Walter Ingram, and James Ingram filed suit in the Madison County Chancery Court alleging that Dr. Timothy Summers and his daughter, Stephanie Summers, committed fraud in transferring title to real property located in Madison County, Mississippi.[1] After the appellants had presented their case, Dr. Summers and Stephanie moved to dismiss the case. The chancellor found that the appellants had failed to prove fraud by clear and convincing evidence and dismissed their claim with prejudice. The appellants appeal the chancellor’s ruling.
FACTS AND PROCEDURAL HISTORY
¶ 2. The subject of this dispute is part of twenty acres originally owned by Bruce Perkins. At the time of his death, Perkins bequeathed five acres to each of his three grandchildren — Mae Helen Douglass (Douglass), Walter Ingram (Walter), and James Ingram (James) — and five acres to his common-law wife. After Perkins’s common-law wife passed away, Lillie Poe inherited her five acres. Poe is the granddaughter of Perkins’s common-law wife. Thus, Mae Helen Douglass, Walter Ingram, James Ingram, and Lillie Poe each owned five acres of the original twenty-acre parcel owned by Perkins.
¶ 3. In 1995, Poe contacted Walter and James Ingram (collectively, the Ingram brothers) about acquiring each person’s five-acre inheritance. Poe claims she orally agreed with each of the Perkins’s grandchildren to purchase their five acres of the subject property for $2,500, a total of $7,500 for the fifteen acres. The appellants admit that no written agreement was prepared containing the above arrangement.
¶ 4. Poe asserts that she decided to travel to Kansas City, Missouri, the home of Douglass and the Ingram brothers, and purchase the subject property. However, due to health problems, Poe was unable to travel to Kansas City for the purchase. She decided to send her daughter as her proxy and informed Douglass and the Ingram brothers about this arrangement.
¶ 5. In October 1997, according to Douglass, she picked up who she thought was Poe’s daughter from the Kansas City airport, but it was actually Stephanie. On October 10, 1997, the two sides executed a quitclaim deed, where Douglass and the Ingram brothers each transferred their five acres to Stephanie for $7,500, with $2,500 going to each grantor.[2] The quit *132 claim deed clearly lists Stephanie Summers as the grantee. Stephanie returned to Kansas City a week later, on October 17, 1997, to execute a warranty deed on the same property. Again, the warranty deed lists Stephanie Summers as the grantee. Approximately a month later, Stephanie mailed a corrected warranty deed to Douglass and the Ingram brothers. The corrected warranty deed, like the original warranty deed and the quitclaim deed, lists Stephanie Summers as the grantee. Douglass and the Ingram brothers signed the corrected warranty deed on February 17, 2000, and returned it to Stephanie. Stephanie then filed an action in the Madison County Chancery Court to confirm title, which resulted in an order on July 11, 2000, confirming title to Stephanie.
¶ 6. Poe and her actual daughter, Renee, visited Kansas City sometime after the execution of the corrected warranty deed. It was at this point, the appellants claim, that Douglass realized that Stephanie was not Poe’s daughter, as she originally thought. However, Douglass vacillated in her testimony about when she first discovered that Stephanie and Renee were not the same person. She stated three separate instances of when she initially discovered the identity of Stephanie and Renee: during a phone conversation with Poe in 1999 (prior to the execution of the corrected warranty 'deed), when Poe and her actual daughter visited Kansas City, and when an affidavit was sent to her containing a picture of Renee.
¶ 7. Douglass and the Ingram brothers all testified that they believed Stephanie was Poe’s daughter when she arrived in Kansas City in October 1997 to execute the quitclaim deed.
¶ 8. On April 10, 2001, Poe, Douglass, and the Ingram brothers filed suit in the Madison County Chancery Court alleging that Dr. Summers and Stephanie fraudulently acquired title to the subject property.[3] In particular, the complaint alleges that Stephanie fraudulently represented herself as Poe’s daughter. After the appellants presented their case, the appellees made a motion to dismiss. On November 19, 2007, the chancellor dismissed the action with prejudice. The chancellor found that Poe failed to list the present action in her petition for bankruptcy, and pursuant to ease law, Poe was judicially estopped from proceeding with the action.[4] The chancellor further found that the appellants failed to establish by clear and convincing evidence that they were defrauded out of the subject property. Aggrieved, the appellants appeal arguing that the chancellor erred in her finding.
STANDARD OF REVIEW
¶ 9. “In granting a motion to dismiss made under [Mississippi Rule of Civil Procedure] 41(b), a trial court should consider ‘the evidence fairly, as distinguished from in the light most favorable to the plaintiff,’ and the court should dismiss the case if it would find for the defendant.” Singing River Elec. Power Ass’n v. State ex rel. Miss. Dep’t of Envtl. Quality, 693 So.2d 368, 371 (Miss.1997). “[T]his Court’s review of the chancellor’s decision to dismiss [the] claim is limited to ascertaining whether the record reveals substantial evidence to support the trial *133 court’s findings in support of its decision.” Id. A chancellor, being the only one to hear the testimonies of witnesses and observe their demeanor, is in the best position to judge their credibility. Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983).
DISCUSSION
WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE APPELLANTS FAILED TO PROVE FRAUD BY CLEAR AND CONVINCING EVIDENCE.
¶ 10. Generally, “[i]n order to establish fraud, the following elements must be proven: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker’s knowledge of its falsity or ignorance of its truth; (5) the speaker’s intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer’s ignorance of its falsity; (7) the hearer’s reliance on the representation’s truth; (8) the hearer’s right to rely thereon; and (9) the hearer’s consequent and proximate injury.” Holland v. Mayfield, 826 So.2d 664, 674(¶ 45) (Miss.1999).
¶ 11. The appellants contend that Dr. Summers and Stephanie committed fraud in obtaining title to the property in Madison County. We will address each claim separately.

A. Dr. Timothy Summers

¶ 12. The appellants allege that Dr. Summers, Poe’s psychiatrist, and his daughter, Stephanie, conspired to defraud them out of the subject property. The appellants further allege that Dr. Summers breached his confidential relationship with Poe by informing Stephanie about Poe’s interest in acquiring the property. However, the chancellor found that the appellants failed to established by clear and convincing evidence that Dr. Summers perpetrated fraud on the appellants.
¶ 13. We find substantial evidence to support the chancellor’s ruling. The appellants provide no proof of their claims against Dr. Summers except the naked declarations by Poe herself. According to Poe, during one of her sessions with Dr. Summers, she confided to him about the agreement to purchase the subject property. In turn, Dr. Summers informed his daughter, Stephanie, about Poe’s agreement to purchase the subject property, thus, breaching his confidentiality duty to Poe. Stephanie then became interested in acquiring the property. Poe claims that Stephanie came to her house and began asking questions about the owners of the property and their contact information.
¶ 14. Poe’s rendition is completely contradicted by Dr. Summers’s account of what transpired. Dr. Summers testified that Poe approached him asking whether he would be interested in purchasing the property. He declined and sent Poe to Stephanie to ask whether she would like to purchase the property. It was then that Poe and Stephanie began their discussions about Stephanie acquiring the property. The appellants did not provide any further evidence with regard to Dr. Summers.
¶ 15. Based upon the testimony given by Poe and Dr. Summers, we find the chancellor’s ruling was correct. The contradictions in each of their respective versions of what occurred support the finding that the appellants failed to prove fraud by clear and convincing evidence. Accordingly, this argument is without merit.

B. Stephanie Summers

¶ 16. The appellants claim that Stephanie fraudulently misrepresented and fraudulently concealed her identity. These two arguments will be addressed together.
*134 ¶ 17. The appellants argue that Stephanie’s failure to identify herself as Stephanie Summers was fraudulent. According to Douglass, when she picked up Stephanie from the Kansas City airport, Douglass asked Stephanie how her mother was doing. Douglass testified that she was inquiring about Poe’s health, knowing that Poe had been unable to travel to Kansas City. Instead of correcting Douglass, Stephanie responded, “Fine. Just Fine.” When Douglass and Stephanie reached the bank where the transaction took place, Douglass introduced Stephanie to the Ingram brothers as Poe’s daughter. The Ingram brothers testified that Stephanie was within an earshot of Douglass (two to three feet) when she made these introductions, but, again, she did not correct Douglass. The appellants argue that these actions and non-actions by Stephanie were part of a scheme to defraud the appellants into thinking that she was Poe’s daughter.
¶ 18. The dispositive issue is whether Stephanie’s nondisclosure amounted to fraud. Silence may constitute fraud when a duty exists to disclose the information claimed to have been suppressed. 37 Am.Jur.2d Fraud and Deceit § 204 (2001). Stephanie had no underlying fiduciary duty to the appellants to speak. There was no evidence presented that could result in Stephanie having a trust or fiduciary relationship with the appellants. She did not have a joint bank account with any of the appellants, handle any of their financial affairs, consult with the appellants regarding their business affairs, or possess keys to any of their possessions. Moreover, no evidence was presented that Stephanie was acting on the appellants’ behalf, or had dominion or control over them. Thus, Stephanie did not have a pre-existing duty to the appellants to inform them of her actual identity.
¶ 19. However, a party to a business transaction is under a duty to disclose facts basic to the transaction if the party knows the other is about to enter into it under a mistake as to them, and the other party could reasonably expect a disclosure of those facts. 37 Am.Jur.2d Fraud and Deceit § 206 (2001). “[Sjilence in a business transaction is not equivalent to fraud unless it is accompanied by deceptive conduct or the suppression of material facts causing actual deception.” Id. Where the parties do not stand in a confidential or fiduciary relationship with one another, an affirmative act of concealment is necessary. Van Zandt v. Van Zandt, 227 Miss. 528, 539, 86 So.2d 466, 470 (1956). Stated differently:
Where one party to a contract or transaction has superior knowledge or knowledge which is not within the fair and reasonable reach of the other party and which he or she could not discover by the exercise of reasonable diligence or has means of knowledge which are not open to both parties alike, he or she is under a legal obligation to speak, and his or her silence constitutes fraud. Where the fact concealed is peculiarly within the knowledge of one party and of such a nature that the other party is justified in assuming its nonexistence, there is a duty of disclosure, and a deliberate suppression of such a fact constitutes fraud.
Accordingly, where a party conceals a material fact knowing that the other party is acting on the assumption that no such fact exists, the concealment is as much a fraud as though the existence of the fact were expressly denied or the reverse of it expressly stated. A duty to disclose is found where one party to a transaction knows that the other is about to enter into the transaction under a mistake as to the material facts, and that the other party because of the rela *135 tionship between them, the customs in the trade, or other objective circumstances, would reasonably expect a disclosure of such facts.
37 C.J.S. Fraud § 31 (2008) (footnotes omitted).
¶ 20. We find substantial evidence to support the chancellor’s finding that Stephanie did not commit fraud. The Ingram brothers did not testify in person during trial; their depositions were entered into evidence in lieu of their testimony. Walter testified that Stephanie never stated she was Poe’s daughter. Moreover, he testified that Stephanie never told the appellants to sign the deed on behalf of her mother, Poe. We give great weight to this testimony because Walter was the person who arranged the entire transaction. He contacted his brother and sister about their desire to sell the property. Walter’s account of what occurred was corroborated by James; Stephanie never stated she was Poe’s daughter or requested that they sign the deed on behalf of her mother Poe. Similarly, Douglass testified that she thought Stephanie was Poe’s daughter based on her words and actions, and what Walter had previously told her. Douglass never testified that she based her belief directly on what Stephanie said. Inferably, Stephanie never told Douglass that she was Poe’s daughter or that she was acting on behalf of Poe. Otherwise, Douglass would have testified that Stephanie told her that she was Poe’s daughter. Her failure to do so leaves us to conclude that Stephanie never directly stated that she was Poe’s daughter. Thus, we find that Stephanie did not participate in suppressing her identity to deceive the appellants into thinking she was Poe’s daughter.
¶ 21. Moreover, Douglass and the Ingram brothers clearly desired to transfer the subject property to Stephanie; all three deeds list Stephanie as the grantee. This clear intention coupled with Stephanie never stating she was Poe’s daughter and the appellants’ inability to testify to the same time line supports the chancellor’s ruling. Accordingly, this issue is without merit.
¶ 22. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. LEE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J., AND JOINED IN RESULT ONLY BY CARLTON, J. MAXWELL, J., NOT PARTICIPATING.

. We will refer to Stephanie Summers O'Neal as Stephanie Summers because this is how she was referenced in the lower court, throughout the record, and in the parties' briefs.

. Douglass testified the land was worth $40,000 at the time of the hearing.

. Of note, the appellants never attempted to return the money they received from Stephanie to support their fraud claim.

. In re Pryor, 341 B.R. 571, 577-78 (Bkrtcy.N.D.Miss.2006), the United States Bankruptcy Court for the Northern District of Mississippi held that a plaintiff is judicially estopped from pursuing a claim after failing to disclose that claim in their bankruptcy petition.