# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-00435-COA

**AARON L. THOMAS**                                                             **APPELLANT**

v.

**DAVID M. COOK, THE HARDISON LAW FIRM,**                 **APPELLEES**
**P.C., DOLORES M. DIGAETANO, M.D., AND**
**CHAMBERLIN CLINIC, P.A.**

DATE OF JUDGMENT:              12/19/2013
TRIAL JUDGE:                   HON. ROBERT P. CHAMBERLIN
COURT FROM WHICH APPEALED:     DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        AARON L. THOMAS (PRO SE)
ATTORNEYS FOR APPELLEES:       STEPHEN C. BARTON
                               KEVIN O'NEAL BASKETTE
NATURE OF THE CASE:            CIVIL - LEGAL MALPRACTICE
TRIAL COURT DISPOSITION:       GRANTED MOTION TO DISMISS
DISPOSITION:                   AFFIRMED - 07/28/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., ISHEE AND MAXWELL, JJ.

### MAXWELL, J., FOR THE COURT:

¶1.     By April 2008, Aaron L. Thomas knew his former attorney, David M. Cook, was representing the doctor Thomas had sued in a matter related to Cook's former representation of Thomas. Despite claiming Cook's adverse representation caused him great distress, Thomas opted not to have Cook disqualified. Instead he waited until March 2011 to ask the court to remove Cook from the case. By this time, the court ruled Thomas had waived any right to disqualify Cook.

¶2.     Thomas then waited another two years to sue Cook for legal malpractice. He claimed

Cook's three-year-long representation of Thomas's adversary was a "continuing tort," which tolled the three-year statute of limitations until the representation ended in March 2011, when Thomas withdrew his lawsuit. But in legal-malpractice actions, Mississippi courts have never delayed the start of the running of the statute of limitations until the end of the lawyer's representation.[1] Rather, the three years to file a legal-malpractice suit starts to run as soon as the client learns (or should have learned) of his attorney's breach of care or conduct—even if the client continues to feel the ill effects of that breach for years to come.[2]

¶3.     Here, any ill effects Thomas experienced during the three years of litigation against his former attorney stemmed from his own failure to have Cook removed from the case. We find Thomas could not waive his right to have Cook disqualified and at the same time rely on Cook's continued adverse representation to toll the statute of limitations under the "continuing tort" doctrine. We instead find the three-year statute of limitations began to run in April 2008, when Thomas discovered Cook's alleged breach of fiduciary duty. Thus, his February 2013 legal-malpractice action was time-barred.

¶4.     We affirm the judgment dismissing Thomas's complaint.

## Background Facts and Procedural History

### I.     *Allegations in Thomas's Complaint*

¶5.     Thomas appeals the dismissal of his complaint under Mississippi Rule of Civil

---

[1] *Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 369 (¶15) (Miss. 2011).

[2] *Id.*; *see also Stevens v. Lake*, 615 So. 2d 1177, 1183 (Miss. 1993).

Procedure 12(b)(6). We review the grant of a Rule 12(b)(6) motion de novo, taking the facts alleged in the complaint as true. *Scaggs v. GPCH-GP, Inc.*, 931 So. 2d 1275, 1274 (¶6) (Miss. 2006). Here is what Thomas alleged:

### A. Board of Bar Examiners Hearing

¶6. In 2006, Cook successfully represented Thomas before the Tennessee Board of Law Examiners (Board). Before taking the bar exam, Thomas disclosed to the Board that he had received conflicting psychiatric diagnoses from Dr. Dolores DiGaetano and Dr. Sherwin Yaffe. The Board ordered Thomas to "show cause" why his psychiatric condition should not keep him from obtaining his law license. Thomas hired Cook to represent him at the show-cause hearing. As part of the representation, Thomas authorized Cook to speak to Dr. DiGaetano and Dr. Yaffe about his diagnoses. Armed with the two doctors' affidavits, Cook convinced the Board that Thomas was fit to practice law.

### B. Medical-Malpractice Lawsuit

¶7. Six months later, in May 2007, Thomas notified Dr. DiGaetano that he planned to sue her and her medical clinic, Chamberlin Clinic, P.A., for medical malpractice. Three days later, Cook stormed into Thomas's office, accused him of being ungrateful, and demanded he retract his notice-of-suit letter. Thomas refused. And in October 2007, he filed a medical-malpractice action in the Circuit Court of DeSoto County, Mississippi.

¶8. In March 2008, an attorney with Cook's law firm, Hardison Law Firm, PC, filed Dr. DiGaetano and Chamberlin Clinic's answer. A week later, Cook filed a motion to appear in

3

the case pro hac vice as counsel for the two defendants.[3] Thomas immediately informed Cook that he did not have Thomas's permission to represent Thomas's adversaries in a substantially related legal matter.[4] But Thomas never moved the circuit court to have Cook disqualified—even though he later claimed Cook's animosity toward him caused him "substantial mental anguish and distress."

¶9.    It was not until almost three years into the litigation—in January 2011—that Thomas finally moved to disqualify Cook. But by this time, the circuit court ruled Thomas had waived his right to move for Cook's disqualification. Citing the emotional toll of Cook's continued adverse representation, Thomas announced to the circuit court that he no longer wanted to pursue his medical-malpractice claim. So in March 2011, the circuit court entered an order dismissing Thomas's action.

### C.    Legal-Malpractice Action

¶10.    Two years later, in February 2013, Thomas filed another action in DeSoto County Circuit Court. This time he sued not only Dr. DiGaetano and Chamberlin Clinic but also Cook and Hardison Law Firm. And the type of malpractice he alleged was legal, not medical.

---

[3] At some point during the medical-malpractice action, Cook received his license to practice law in Mississippi.

[4] Under Mississippi Rule of Professional Conduct 1.9(a), "A lawyer who has formerly represented a client in a matter shall not . . . represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation[.]"

4

¶11.    There are two types of legal-malpractice claims—one based on alleged negligence (or breach of the standard of care), and one based on alleged breach of fiduciary duties (or breach of the standard of conduct). *Crist v. Loyacono*, 65 So. 3d 837, 842 (¶15) (Miss. 2011). In his amended complaint,[5] Thomas alleged the second type—breach of the standard of conduct.

¶12.    In Count I, Thomas alleged Cook breached his fiduciary duty by representing Thomas's adversaries in the medical-malpractice lawsuit, which was substantially related to Cook's 2006 representation of Thomas before the Board. Thomas asserted this breach injured him by causing him emotional distress and, ultimately, the dismissal of the medical-malpractice action. In Count II, Thomas accused Cook of misusing "confidential information" about Thomas's psychiatric condition that Cook learned through the 2006 representation. Thomas complained that Cook used that information to conclude Thomas's medical-malpractice action was "morally reprehensible" and to punish Thomas accordingly by representing Dr. DiGaetano, by using "harsh tactics," by treating him with animosity during the litigation, by threatening him, and by causing others to feel negatively toward him. Thomas claimed the same injury as in the first count—emotional distress and dismissal of his medical-malpractice lawsuit.

¶13.    Both counts further claimed Hardison Law Firm, Dr. DiGaetano, and Chamberlin

---

[5] Thomas's original complaint was met with a motion to dismiss for failure to state a claim. *See* M.R.C.P. 12(b)(6). Instead of granting this motion, the circuit court permitted Thomas to amend his complaint, which he did in August 2013.

Clinic were "vicariously liable" for their "agent," Cook.

## II. *Dismissal of Thomas's Complaint*

¶14.    Instead of filing answers, all four defendants moved to dismiss Thomas's complaint under Rule 12(b)(6).  They asserted Thomas had failed to state a prima facie case of legal malpractice.  They also claimed Thomas's complaint fell outside of the applicable three-year statute of limitations.

¶15.    The circuit court ruled Thomas's complaint was barred by the statute of limitations.  Thomas's three years to sue began in April 2008, when he was notified Cook had been admitted pro hac vice.  So his February 2013 complaint fell way outside the April 2011 deadline.

¶16.    In so ruling, the circuit court rejected Thomas's argument that Cook's representation was a "continuing tort" stretching the statute of limitations to March 2011, when Thomas withdrew his medical-malpractice suit.  The court found the mere fact Thomas felt the continuing ill effects of Cook's decision to represent Dr. DiGaetano and Chamberlin Clinic did not make Cook's representation a "continuing tort."

¶17.    Following an unsuccessful motion under Mississippi Rule of Civil Procedure 59(e), Thomas timely appealed.  *See* M.R.A.P. 4(d).

### Discussion

¶18.    On appeal, Thomas argues the circuit court failed to recognize Cook's three-year-long representation of Dr. DiGaetano and Chamberlin Clinic was a "continuing tort," which tolled

the running of the statute of limitations until the representation ended. But our de novo review leads to the same conclusion as the circuit court—Thomas's complaint was time-barred. Cook's adverse representation was not a "continuing tort." Nor could Thomas waive his right to have Cook disqualified as adverse counsel and then rely on the fact Cook was not disqualified to toll the running of the statute of limitations.

### I.     Claims Against Dr. DiGaetano and Chamberlin Clinic

¶19.    Before we address Thomas's "continuing tort" argument, we point out why—continuing or not—the tort claims against Dr. DiGaetano and Chamberlin Clinic failed to state a claim for which relief can be granted. *See* M.R.C.P. 12(b)(6).

¶20.    Thomas's *legal-malpractice* claims against his doctor and her clinic fail for the obvious reason that neither ever acted as Thomas's attorney. The first essential element of a legal-malpractice claim is "the existence of an attorney-client relationship." *Crist*, 65 So. 3d at 843 (¶15). Thomas did not allege that an attorney-client relationship existed between himself and his medical doctor. Nor could he. And since Dr. DiGaetano owed Thomas none of the duties an attorney owes her clients, there is no way Dr. DiGaetano—and, by extension, Chamberlin Clinic—could have breached any of those duties.

¶21.    Thomas asserted Dr. DiGaetano and Chamberlin Clinic were "vicariously liable" because Cook acted as their "agent." But the doctrine of respondeat superior, from which vicarious liability is derived, does not apply to every agency relationship. Instead, it specifically applies to an employer-employee relationship and holds employers liable in tort

7

for the negligent actions of their employees, taken on behalf of the employer while in the course and scope of their employment. *Gulledge v. Shaw*, 880 So. 2d 288, 295 (¶17) (Miss. 2004). Cook was not the "employee" of his clients, acting merely at their bidding and under their direction. So Thomas's vicarious-liability theory fails. And the legal-malpractice claims against Dr. DiGaetano and Chamberlin Clinic were properly dismissed.

## II. Claims Against Cook and Hardison Law Firm

¶22. Thomas did allege an attorney-client relationship had existed between himself and Cook and Hardison Law Firm. So for these two defendants, we must ask if Thomas alleged a viable claim for legal malpractice. We conclude he did not. Like the circuit court, we find Thomas's claims are time-barred.

### A. Statute of Limitations

¶23. Thomas's legal-malpractice action fell under the general three-year statute of limitations. *Channel v. Loyacono*, 954 So. 2d 415, 420 (¶13) (Miss. 2007) (citing Miss. Code Ann. § 15-1-49(1) (Rev. 2012)). Under this statute, a plaintiff's three years to file begins when the cause of action accrues—unless it is tolled for some reason.

#### 1. Continuing Tort versus Continuing Wrong

¶24. Thomas argues the statute was tolled by the "continuing tort doctrine." "A 'continuing tort' is one inflicted over a period of time" through "wrongful conduct that is repeated until desisted." *Stevens*, 615 So. 2d at 1183. Because "each day creates a separate cause of action," the statute of limitations begins to run from the date of the last injury or

when the tortious actions cease. *Id.* Thomas claims he was repeatedly injured by Cook's adverse representation. Because that representation did not end until March 2011—when Thomas withdrew his medical-malpractice complaint—he asserts the statute of limitations was tolled until that date and, consequently, did not run until March 2014. Thus, his February 2013 filing was timely.

¶25. While Thomas's legal-malpractice theory was not negligence based, it is worth noting that the continuing-tort doctrine has been deemed not to apply to negligence-based legal-malpractice actions. *Smith v. Sneed*, 638 So. 2d 1252, 1255-56 (Miss. 1994); *Stevens*, 615 So. 2d at 1183. Instead, when an attorney's negligent act causes a client's injury, the statute of limitations begins to run when the client reasonably discovers his attorney's negligence—even if the client continues to suffer based on his attorney's negligence. *See Smith*, 638 So. 2d at 1255-56 (holding statute of limitations for convicted criminal's legal-malpractice action arose at the time of the original injury—the imposition of a twenty-year sentence—and was not tolled by the repeated ill effects of the injury—continued imprisonment); *Stevens*, 615 So. 2d at 1183 (rejecting argument that creation of faulty trust was a continuing tort because clients continued to suffer financial loss years after trust was set up).

¶26. Again, Thomas does not allege Cook was negligent. Instead, his malpractice theory is that Cook breached the standard of conduct by representing Thomas's adversaries in the medical-malpractice suit. In characterizing Cook's actions as a continuing tort, Thomas is

9

claiming each distinct act Cook performed in the adverse representation—such as showing up for a deposition or hearing or filing a document—was itself a separate tort. We disagree. The tort of breach of fiduciary duty was allegedly accomplished through Cook's adverse representation *as a whole*—one overall breach, not a string of breaches each creating a separate cause of action.

¶27. As the supreme court said in *Stevens*, "[a] continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Stevens*, 615 So. 2d at 1183. "Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong." *Id.* Here, we find any distress Thomas experienced during the three years of litigating against Cook was part of the "continual ill effect" of Cook's decision to take on the adverse representation in the first place—a continuing wrong, not a continuing tort. *Id.*; *see also Sneed*, 638 So. 2d at 1255-56 (finding imprisonment a continual effect of being convicted and sentenced based on alleged malpractice, not a continuing tort tolling the statute of limitations). Thus, the limitations period was not extended until March 2011.

### 2. Discovery Rule

¶28. If there was any tolling of the statute of limitations, it was until the time Thomas discovered Cook had taken on the adverse representation. Mississippi courts apply the "discovery rule" to legal-malpractice actions. *Bennett v. Hill-Boren, P.C.*, 52 So. 3d 364, 369

(¶15) (Miss. 2011). Under the discovery rule, the limitations period begins to run when the client "learns, or through reasonable diligence, should have learned, of the negligence of the lawyer." *Id.* Here, the circuit court found the latest Thomas would have discovered Cook's breach of fiduciary duty was April 2008, when he was notified Cook had been admitted pro hac vice.

¶29. In adopting the discovery rule, the Mississippi Supreme Court has expressly rejected the "continuous representation rule"—i.e, the tolling of the statute of limitations in a legal-malpractice action until an attorney has completed the representation in the matter in which the malpractice was committed. *Id.* at 370 (¶¶13-14); *Stevens*, 615 So. 2d at 1183. Of course, this case presents a different scenario than *Bennett* or *Stevens*. Thomas is not arguing Cook's continued representation of him tolled the statute of limitations. Instead, Thomas argues Cook's continued representation of his adversaries kept the tort alive and ongoing, and thus prevented the limitations period from starting. But those cases are instructive. From *Bennett* and *Stevens* we learn that what determines when the statute of limitations begins is not when representation is concluded, but rather when a client (or former client) discovers an attorney's malpractice. *Bennett*, 52 So. 3d at 370 (¶17) (citing *Stevens*, 615 So. 2d at 1182). And here, Thomas discovered Cook's alleged breach by April 2008, almost five years before he sued Cook.

¶30. Because Thomas did not file his legal-malpractice action by April 2011, we agree with the circuit court his action had to be dismissed as time-barred. *See Ralph Walker, Inc. v.*

11

*Gallager*, 926 So. 2d 890, 897 (¶13) (Miss. 2006) (holding circuit court should have granted Rule 12(b)(6) motion to dismiss because action was time-barred).

### B. Waiver

¶31. But even if Cook's adverse representation had been a continuing tort, under the facts alleged, Thomas's complaint was still untimely.

¶32. Thomas *waived* his right to have Cook disqualified as defense counsel. "In cases involving successive representations, a party is required to move for his former lawyer [to] be disqualified as soon as he is aware of the conflict[.]" *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1217 (Miss. 1996). "Failure to move for disqualification at the earliest practical opportunity will constitute a waiver." *Id.* Here, despite claiming Cook's representation caused him severe emotional distress, Thomas never moved to have Cook disqualified from the medical-malpractice suit. Instead, he waited almost three years, until February 2011, to ask the court to remove Cook as counsel. The court refused, citing Thomas's waiver of any right to have Cook disqualified.

¶33. In a legal-malpractice action, it is not enough to assert an attorney breached his fiduciary duty. The client must also establish that the breach of duty was the proximate cause of his injury. *Id.* While Cook's appearing as defense counsel may have been the proximate cause of Thomas's initial suffering, any emotional distress Thomas experienced within three years of suing Cook was caused by Thomas's failure to have Cook removed from the case. In other words, any injury Thomas suffered within the limitations period—including the

voluntary dismissal of his medical-malpractice action—was self-inflicted.

¶34. In *Wilbourn,* the supreme court held that a "client cannot hold the right [to disqualify his former attorney] in reserve for tactical purposes[.]" *Id.* While that case was discussing a different tactic, the same standard applies here. We find Thomas could not hold onto the right to disqualify Cook and, at the same time, claim Cook's continued participation in the medical-malpractice suit kept the statute of limitations from running in the legal-malpractice suit. Stated differently, Thomas could not fail to stop Cook from continuing the representation when he had the chance, and then claim the fact Cook continued the representation until March 2011 kept his legal-malpractice claim alive.

¶35. For these reasons, we agree with the circuit court that Thomas's February 2013 complaint was time-barred. Therefore, we affirm the judgment dismissing Thomas's complaint.

¶36. **THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J. CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. WILSON, J., NOT PARTICIPATING.**

**CARLTON, J., DISSENTING:**

¶37. I respectfully dissent. Aaron Thomas could not have waived David Cook's conflict of interest without full disclosure by Cook. *See* Miss. R. Prof'l Conduct 1.7. As an attorney,

13

Cook possessed the duty under our Rules of Professional Conduct to "not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes: (1) the representation will not adversely affect the relationship with the other client; and (2) each client has given knowing and informed consent after consultation." *See* Miss. R. Prof'l Conduct 1.7(a)(1)-(2). Moreover, "[t]he consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved." *Id*.

¶38. The Rules of Professional Conduct provide that the duty belongs to the attorney to obtain informed consent from the former client, by obtaining knowing and informed consent after consultation with the client. The attorney's duty of loyalty to his client is a continuing duty. *See* Miss. R. Prof'l Conduct 1.7 cmt. Since Cook possessed a continuing duty to obtain a waiver of the conflict of interest herein, I submit that the statute of limitations did not begin to run in April 2008, the date Thomas first discovered Cook had taken on the adverse representation. Rather, Cook continually breached his fiduciary duty by failing to obtain a waiver from Thomas.

¶39. The comment to Rule 1.7 explains that when an impermissible conflict of interest may exist before the representation is undertaken, the representation should be declined. The comment to Mississippi Rule of Professional Conduct 1.16 further explains that if the impermissible conflict arises after the representation begins, then the attorney must withdraw from the representation. In *Kiker v. State*, 55 So. 3d 1060, 1066 (¶14) (Miss. 2011), the

14

supreme court stated: "If an impermissible conflict arises after the [attorney] already has undertaken representation, the [attorney] should withdraw from the case." *See also* Miss. R. Prof'l Conduct 1.16 cmt.

¶40.    In the instant case, the majority errs in finding Thomas waived his right to have Cook, his former attorney, disqualified as defense counsel. Cook failed to provide Thomas with any full disclosure or consultation, as required by Rule 1.7, to obtain a waiver of the conflict of interest herein.

¶41.    The majority mistakenly relies upon *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1217 (Miss. 1996), which is factually different. Wilbourn asked the supreme court to presume access to confidential information and presume breach. *Id.* In the court's analysis, it discussed two federal court cases wherein the federal courts had applied waivers in litigation. *Id.* However, in applying the law to the claim raised by Wilbourn and in affirming summary judgment against Wilbourn, the supreme court found no Mississippi case on point. *Id.* The *Wilbourn* court stated the following:

> Summary judgment was proper, although[ ] no Mississippi case on point addresses an attorney's duties during an adverse suit against the former client in a similar matter. The cause of action is not established by merely showing that SW&W and Ward had access to confidential information or that the representation was adverse. Wilbourn must establish, not only SW&W, P.A., and Ward possessed and misused the confidential information[,] but also the fiduciary breach was a proximate cause of the injury. These requirements are consistent with the *Hickox* requirement of proximate cause. Although Wilbourn alleged SW&W, P.A., and Ward breached and misused confidential information, he failed to show the causal connection.

*Id.*

¶42. In the case at bar, no dispute exists that Cook possessed Thomas's confidential client information gained by his former representation of Thomas. Moreover, no dispute exists that Cook's successive representation is directly adverse to his former representation of Thomas. Therefore, under the Mississippi Rules of Professional Conduct, Cook possessed a continuing duty to obtain informed consent from Thomas prior to undertaking new representation directly adverse to his former representation of Thomas. *Compare Kiker*, 55 So. 3d at 1065-67 (¶¶14-17); Miss. R. Prof'l Conduct 1.9(b) (addressing conflicts of interest with regard to former clients).

16